In re Michael HANSEN and Kimberly A. Hansen, Debtors.

Kimberly A. Hansen; Michael Hansen, Appellants,

v.

Scott Moore; Insco Insurance Services, Inc., Appellees.

BAP No. CC–06–1137–BPaMa.
Bankruptcy No. SA 03–19212 ES.
Adversary Nos. SA 04–01336 ES, SA 04–01337 ES.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 22, 2007.

Filed April 23, 2007.

J. Scott Bovitz, Bovitz & Spitzer, Los Angeles, CA, for Appellants.

Andrew K. Mauthe, Irvine, CA, for Appellees.

Before: BRANDT, PAPPAS and MARLAR,[1] Bankruptcy Judges.

## OPINION

BRANDT, Bankruptcy Judge.

After trial, the bankruptcy court entered judgment denying debtor Kimberly Hansen's discharge under § 727(a)[2]. She timely moved for reconsideration, which the bankruptcy court denied. Thereafter, the bankruptcy court awarded the adversary plaintiffs $97,678.72 in attorneys' fees

---

**1.** Hon. James M. Marlar, Bankruptcy Judge for the District of Arizona, sitting by designation.

**2.** Absent contrary indication, all "Code," chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 prior to its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23, as the case from which this appeal arises was filed before its effective date (generally 17 October 2005).

All "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "FRCP" references are to the Federal Rules of Civil Procedure.

as a sanction under FRCP 37, applicable via Rule 7037. Debtor timely appealed all three orders.

We conclude that,

- To the extent she preserved her objections, debtor has not shown the bankruptcy court considered inadmissible evidence, or that its findings of fact are clearly erroneous;
- Debtor waived her affirmative defense that settlement of the trustee's separate denial of discharge action precluded these actions, and that, in any event, there is no preclusion; and
- Debtor waived any issue regarding the sanction award.

Accordingly, we AFFIRM the judgment and the two orders.

## I. FACTS

Kimberly Hansen ("Hansen"), an attorney, and Michael Hansen, a real estate broker, filed for chapter 7 relief on 22 December 2003. Although Mr. Hansen is named as an appellant, he was not a party to the adversary proceeding, nor was he named in the judgment on appeal.

Debtors hired counsel to assist them with the preparation and filing of their bankruptcy. Hansen reviewed and revised at least two versions of the chapter 7 forms, after which counsel transmitted revised forms to her. She signed her petition, schedules, and statements approximately two months before they were filed.

Debtors scheduled a residence in Orange County, California, with a value of $500,000, encumbered by a first deed of trust securing $356,718.92, and a second deed of trust in favor of "IAT Group" for $115,000. Testimony at trial established that as of the petition date there was no encumbrance of record in favor of IAT Group, nor was there any such entity. Rather, "IAT Group" referred to Hansen's mother, Irene A. Tennant.

The schedules and statements contained a number of other inaccuracies: omitted assets, understated income, undisclosed prior related bankruptcy cases, and undisclosed potentially preferential transfers. On the same day as their continued § 341 meeting, debtors filed amended schedules of income and expenses and an amended statement of financial affairs. They amended their schedules again after Rule 2004 examinations. Their amended schedule of secured claims still included the deed of trust to IAT Group, but the claim amount was reduced to $0.

In the meantime, on 9 February 2004, Hansen recorded a deed of trust in favor of her mother, which purportedly secured a $115,000 loan Ms. Tennant made to the Hansens in 1994 to help purchase the residence. The evidence at trial was that the total amount loaned had been $50,000, and that the $115,000 reflected the amount due as of the petition date.

Appellees INSCO Insurance Services, Inc., and Scott Moore are creditors by virtue of attorney's fees awarded to them in Hansen's unsuccessful pre-petition employment discrimination lawsuit against INSCO and Moore, a former employee of INSCO who was named as a codefendant. On 26 May 2004 INSCO and Moore initiated separate adversary proceedings against Hansen, seeking to deny her discharge under § 727.

The chapter 7 trustee also initiated a § 727 action against debtors, which they settled by paying $217,500 to the estate. The bankruptcy court approved the settlement by order entered 19 January 2005, and thereafter dismissed the trustee's adversary proceeding with prejudice.

The INSCO and Moore adversary proceedings were consolidated for trial. After trial, the bankruptcy court concluded that debtor's discharge should be denied pursuant to §§ 727(a)(2)(A) (transfer of property

with intent to hinder, delay, or defraud), and (a)(4)(A) and (B) (false oath and false claim). Transcript, 24 January 2006, pages 2–5. The court entered findings and conclusions and a separate judgment on 16 February 2006.

After the bankruptcy court ruled but before judgment was entered Hansen moved for reconsideration, arguing for the first time that the settlement of the trustee's § 727 action barred the separate nondischargeability actions of INSCO and Moore. The trial judge having retired, the action was reassigned to another judge, who heard the motion and denied it.

INSCO and Moore moved for an award of attorneys' fees under FRCP 37, applicable via Rule 7037, as a sanction for debtors' refusal to admit during discovery factual matters that were later proven at trial. The bankruptcy court awarded $97,678.72.

Hansen appealed the judgment, the denial of reconsideration, and the sanction.[3]

## II. JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334 and § 157(b)(1) and (b)(2)(J), and we do under 28 U.S.C. § 158(c).

## III. ISSUES[4]

A. Whether the bankruptcy court abused its discretion in admitting excerpts of deposition testimony of non-party witnesses, excerpts of § 341 meeting testimony, and excerpts of Rule 2004 ex-

aminations of both party and non-party witnesses;

B. Whether the bankruptcy court erred in entering judgment denying Hansen's discharge;

C. Whether the bankruptcy court abused its discretion in denying Hansen's motion for reconsideration;

D. Whether INSCO and Moore are estopped by their failure to object to the settlement;

E. Whether the nondischargeability actions of INSCO and Moore are barred by their election of other remedies; and

F. Whether the bankruptcy court abused its discretion in sanctioning Hansen under FRCP 37.

## IV. STANDARDS OF REVIEW

 We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *In re Lawson*, 122 F.3d 1237, 1240 (9th Cir.1997). In an action for denial of discharge, a finding that debtor acted with intent to hinder, delay, or defraud creditors is reviewed for clear error. *Id.*

 "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). If two views of the evidence

---

3. Debtor's notice of appeal also lists a fourth order which denied her homestead exemption. This order was entered in the main case on 16 February 2006; the notice of appeal was not timely as to that order. Rule 8002. Accordingly, this appeal is limited to the three orders timely appealed.

4. In her opening brief, appellant requests that we order the bankruptcy court to issue a discharge to Michael Hansen. Although it is

not evident from the record provided us why his discharge has not been issued, this question was not addressed in the orders on appeal. Accordingly, we have no jurisdiction to grant the relief requested. *See* 28 U.S.C. § 158(a) (appellate court has jurisdiction over final judgments, orders, and decrees, and interlocutory orders under some circumstances). Resolution of Michael Hansen's discharge status lies with the bankruptcy court.

are possible, the trial judge's choice between them cannot be clearly erroneous. *Anderson v. Bessemer City*, 470 U.S. 564, 573–575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). We give findings of fact based on credibility particular deference. *Id.* *See also* Rule 8013 (on appeal, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.")

We review the denial of a motion for reconsideration for abuse of discretion, *In re Weiner*, 161 F.3d 1216, 1217 (9th Cir.1998); likewise the imposition of discovery sanctions under FRCP 37. *In re Rothery*, 200 B.R. 644, 649 (9th Cir. BAP 1996). A bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). To reverse for abuse of discretion we must have a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached. *S.E.C. v. Coldicutt*, 258 F.3d 939, 941 (9th Cir.2001); *In re Black*, 222 B.R. 896, 899 (9th Cir. BAP 1998).

We also review a bankruptcy court's evidentiary rulings for abuse of discretion. *Latman v. Burdette*, 366 F.3d 774, 786 (9th Cir.2004). To reverse an evidentiary ruling, we must conclude that the error was prejudicial. *Id.*

## V. DISCUSSION

### A. *Evidentiary Rulings*

Hansen argues that the bankruptcy court erred in admitting (allowing to be read into the record) excerpts of deposition testimony of non-party witnesses, § 341 first meeting of creditors testimony, and Rule 2004 examination testimony of both party and non-party witnesses. She argues that § 341 testimony and Rule 2004 examination testimony are not "deposi-

tions" admissible under FRCP 32, applicable via Rule 7032, and that plaintiffs should have elicited live testimony from Kimberly Hansen and the other witnesses.

A party who fails to object to evidence at trial waives the right to raise admissibility issues on appeal. *Price v. Kramer*, 200 F.3d 1237, 1251–52 (9th Cir. 2000). The record reflects that objections to evidence were not consistently raised at trial, and that some were raised but were not pursued. For example, Hansen's counsel objected to admission of excerpts of § 341 meeting testimony on the basis that the transcript had not been authenticated. The court conditionally admitted the excerpts without prejudice to a motion to strike as to authenticity. Transcript, 2 December 2005, page 41. Nothing in the record indicates that Hansen ever so moved.

More importantly, appellant has not articulated how she was prejudiced by admission of the evidence at issue. Each witness whose testimony was read into the record was present at the trial, gave live testimony, and could have been cross-examined on their previous testimony. And it is apparent that the bankruptcy court's ruling was based on live testimony. "In nonjury trials, it is assumed that in reaching a decision the trial judge disregarded evidence admitted improperly over objection if the record contains sufficient competent evidence to sustain the result." Hon. Barry Russell, *Bankruptcy Evidence Manual*, § 103.6 (2007 ed.) (citing *Plummer v. Western Int'l Hotels Co., Inc.*, 656 F.2d 502, 505 (9th Cir.1981)).

If evidence was improperly admitted, appellant points to nothing to rebut the presumption that the court did not rely on it. She has shown no error.

## B. *Denial of Discharge*

The bankruptcy court denied Hansen's discharge under §§ 727(a)(2), (a)(4)(A), and (a)(4)(B). Her primary argument is that the evidence did not support the bankruptcy court's findings on intent.

### 1. *Section 727(a)(2)*

 Under this subsection, a debtor's discharge shall be denied if she,

> with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> (A) property of the debtor, within one year before the date of the filing of the petition; or
>
> (B) property of the estate, after the date of the filing of the petition[.]

§ 727(a)(2). The party seeking denial of discharge under this subsection must prove, by a preponderance of the evidence, "1) a disposition of property, such as transfer or concealment, and 2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing of the property." *In re Beauchamp*, 236 B.R. 727, 732 (9th Cir. BAP 1999), *aff'd*, 5 Fed.Appx. 743 (9th Cir.2001) (quoting *Lawson*, 122 F.3d at 1240). The granting of a security interest is a transfer of property under the Code. *Lawson*, 122 F.3d at 1240; § 101(54).

It is undisputed that debtor transferred an interest in estate property post-petition, by recording the deed of trust in favor of her mother, leaving only intent at issue. She argues that this element was not proven.

 Intent to hinder, delay, or defraud may be inferred from circumstantial evidence. *In re Woodfield*, 978 F.2d 516, 518 (9th Cir.1992); *In re Devers*, 759 F.2d 751, 753–54 (9th Cir.1985). At trial, Han-

sen testified that she and her husband had executed a deed of trust in 1994 when her mother made them a loan and believed it had been recorded. When Hansen later discovered it had not, she allegedly altered the original to change the amount from $50,000 to $115,000, and recorded it on the advice of counsel. Irene Tennant testified that she had no recollection of the deed of trust, and a forensic document examiner testified that the document Hansen recorded was an altered version of a reconveyed deed of trust in favor of the parties from whom the Hansens had purchased the property (the Robinsons).

The bankruptcy court found Hansen's explanations surrounding the recording not credible:

> She would have this Court believe that the post petition recordation was based on the advice or instruction of her attorney of record in this bankruptcy. This Court agrees with Plaintiffs, however, that even if one believes an attorney would give and gave Defendant such advice, it is not reasonable for someone with her background, education and qualifications to follow it . . . . it is much more likely than not that the trust deed . . . recorded was . . . an altered version of the one they [debtors] executed in favor of the people from whom they bought the home in 1994, the Robinsons.

Transcript, 24 January 2006, pages 3–4.

 "[I]t is axiomatic that the debtor cannot prevail if [s]he fails to offer credible evidence after the creditor makes a prima facie case. A debtor's failure to offer a satisfactory explanation when called on by the court is a sufficient ground for denial of discharge. . . ." *Devers*, 759 F.2d at 754 (citation omitted). That was the case here.

The bankruptcy court did not err in concluding that Hansen acted with intent to hinder, delay or defraud.

## 2. *Sections 727(a)(4)(A) and (B)*

 Denial of discharge is also warranted if it is shown that "the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account; [or] (B) presented or used a false claim[.]" § 727(a)(4). The purpose of this provision is to ensure that a debtor provides reliable information so interested parties do not have to "dig out [the] facts in examination or investigations[.]" *In re Aubrey*, 111 B.R. 268, 274 (9th Cir. BAP 1990) (citation omitted). As under § 727(a)(2), intent under § 727(a)(4) may be established by circumstantial evidence, or by inferences drawn from a course of conduct. *In re Wills*, 243 B.R. 58, 64 (9th Cir. BAP 1999).

 That Hansens amended their bankruptcy schedules after inadequacies were revealed at their § 341 meeting and Rule 2004 exams is immaterial in these circumstances: foxhole conversions are not necessarily convincing, and disclosures made after a debtor realizes exposure is imminent do not absolve fraud. *See Beauchamp*, 236 B.R. at 734.

The bankruptcy court found that "Defendant and her husband materially misrepresented the Debtors' financial affairs in the Initial Schedules and the Initial Statement of Affairs. The Defendant and her husband omitted income, assets, and liabilities, misrepresented their monthly expenses, and misrepresented the amount and nature of a debt allegedly owed to the Defendant's mother." Findings of Fact and Conclusions of Law, page 3, ¶ 14.

Specifically, the bankruptcy court found that debtors:

1. Failed to list two related bankruptcy cases pending on or within six years before the petition date (¶ 15);

2. Listed on Schedule B one bank account with a balance of $46.86, when debtors owned three bank accounts with a combined balance of at least $15,000 (¶ 16);

3. Listed on Schedule D a deed of trust encumbering debtors' residence in favor of IAT Group for $115,000, when there was no such encumbrance on the petition date, and no entity called IAT Group—rather, the name was used by the debtor to refer to her mother, Irene A. Tennant (¶ 17);

4. Failed to list interests in life insurance policies (¶ 26);

5. Failed to list interests in partnerships and business entities (¶ 27);

6. Failed to disclose a payment of $8000 to the IRS within 90 days of the petition date (¶ 29);

7. Failed to disclose a payment of $5711.33 to George Hansen, Michael Hansen's father, within one year of the petition date (¶ 30);

8. Understated their gross income for the twelve months preceding the petition date (¶ 31); and

9. Amended their schedules only after they learned that their inaccuracies had been discovered; moreover, some of the amended schedules perpetuated the inaccuracies (¶ 33).

Again, the bankruptcy court found Hansen's explanations not credible:

She contends her attorney filed [the petition and schedules] without authorization using forged signatures and containing admittedly incorrect information, and professes to have misunderstood a question in her bankruptcy papers which she repeatedly answered incorrectly respecting the repayment of a loan from her father-in-law during the year preceding the filing of the bankruptcy petition, the majority of which was apparently paid the month before the petition was filed.

. . . .

Defendant's contentions that the inaccurate information provided in the bankruptcy schedules regarding the Debtor's income was inadvertent is also suspect. . . . [H]er allegedly signing the incomplete bankruptcy papers a couple of months before they were filed provides another unfortunate benchmark of her willingness to disregard the requirements and obligations of signing documents under oath. . . . [I]f the Defendant was in fact surprised by the filing of her petition, she had ample opportunity after receiving notice of her first meeting of creditors to take steps to assure that the papers were filed as she expected rather than waiting to the day of the creditor's meeting to review them.

Transcript, 24 January 2006, pages 2, 4–5.

The bankruptcy court did not err in finding the requisite intent. The sheer number of material inaccuracies contained in schedules that debtor, an attorney, admittedly reviewed and revised twice suffices as circumstantial evidence to support the finding that the "knowingly and fraudulently" element of § 727(a)(4) was proven. *See In re Searles,* 317 B.R. 368, 378–79 (9th Cir. BAP 2004), *aff'd,* 212 Fed.Appx. 589, 2006 WL 3431844 (9th Cir.2006) (discussing debtor's continuing duty to assure accuracy and completeness of schedules). Here we also have the bankruptcy court's unequivocal finding, to which we must defer, that Hansen's explanations were not credible.

## C. *Reconsideration*

■ Reconsideration under FRCP 59(e), applicable via Rule 9023, is appropriate only if the moving party demonstrates (1) manifest error of fact; (2) manifest error of law; or (3) newly discovered evidence. *In re Basham,* 208 B.R. 926, 934 (9th Cir. BAP 1997), *aff'd,* 152 F.3d 924 (9th Cir.1998) (table).

Hanson moved for reconsideration on the ground that INSCO and Moore were barred, under principles of res judicata, from relitigating the § 727 claims.

■ The res judicata doctrines regarding judgments of federal courts are a matter of federal common law. The Supreme Court has applied the *Restatement (Second) of Judgments'* substitution of the terms "claim preclusion" and "issue preclusion" for "res judicata" and "collateral estoppel." *In re George,* 318 B.R. 729, 733 (9th Cir. BAP 2004), *aff'd,* 144 Fed.Appx. 636 (9th Cir.2005), *cert. denied,* 546 U.S. 1094, 126 S.Ct. 1068, 163 L.Ed.2d 861 (2006) (citing *New Hampshire v. Maine,* 532 U.S. 742, 748, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001); additional citations omitted). Both claim and issue preclusion are waived if not pled as affirmative defenses. *Id.* at 736; FRCP 8(c). Nothing in the record indicates debtor ever raised preclusion before she moved for reconsideration. Accordingly, she has waived that affirmative defense. FRCP 12(b), applicable via Rule 7012(b). *Kontrick v. Ryan,* 540 U.S. 443, 459, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004).

■ Even had she not waived the defense, the bankruptcy court correctly determined that claim preclusion did not apply. Claim preclusion can operate to bar a legal theory that has never been, but could and should have been, litigated by the parties in a prior proceeding:

Claim preclusion treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same claim or cause of action. Claim preclusion prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.

*Robi v. Five Platters, Inc.,* 838 F.2d 318, 321–22 (9th Cir.1988) (quotations, citations, and footnote omitted).

 For these purposes, a "claim" is a party's right to pursue remedies "with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Restatement (Second) of Judgments* § 24(1) (1982). When there has been a final judgment on a part of a "claim," the right to obtain remedies respecting that claim is extinguished. *George,* 318 B.R. at 735–37; Christopher Klein et al., *Principles of Preclusion and Estoppel in Bankruptcy Cases,* 79 Am. Bankr.L.J. 839, 852–58 (2005).

 Under federal law, the doctrine of claim preclusion requires: (1) the identity of claims, (2) a final judgment on the merits, and (3) privity between the parties. *Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,* 322 F.3d 1064, 1077 (9th Cir.2003). A judicially approved settlement operates as a final judgment on the merits for purposes of claim preclusion. *Rein v. Providian Fin. Corp.,* 270 F.3d 895, 902–03 (9th Cir.2001).

 It is undisputed that the claims are identical, although there are some variations in the subsections of § 727 under which the parties sought relief. For example, the trustee's complaint included a claim under subsection (a)(7), while the INSCO/Moore complaints did not. But

> [w]hat constitutes the same "claim" for purposes of claim preclusion is determined under the so-called "transactional test" . . . . This test focuses on the transactional nucleus of operative facts and includes all rights to remedies with respect to all or any part of the "transaction," determined pragmatically, out of which the action arose, so long as they could conveniently be tried together.

*George,* 318 B.R. at 735 (citations omitted). All the claims in the § 727 actions arose out of the same basic facts.

Thus, the only element at issue is privity between trustee and creditors.

 A person is in privity when that person is "so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *Headwaters Inc. v. U.S. Forest Serv.,* 399 F.3d 1047, 1052–53 (9th Cir.2005) (citation omitted). The concept was traditionally limited to certain "legal relationships in which two parties have identical or transferred rights with respect to a particular legal interest," such as co-owners of property, decedents and heirs, joint obligees, etc. *Id.* at 1053. However, it now includes almost any relationship in which "there is 'substantial identity' between parties, that is, when there is sufficient commonality of interest. . . . [P]rivity is a flexible concept dependent on the particular relationship between the parties in each individual set of cases[.]" *Tahoe–Sierra,* 322 F.3d at 1081–82 (citations and quotations omitted).

 Still, parallel legal interests are not sufficient to establish privity. It must be shown that the subsequent plaintiff's interests were adequately represented by the plaintiff in the former litigation. *See Headwaters,* 399 F.3d at 1054; *Irwin v. Mascott,* 370 F.3d 924, 930 (9th Cir.2004).

Here the bankruptcy court correctly concluded that the trustee was not in privity with appellees. First, § 727 grants the trustee and each creditor an independent right to file an action to deny discharge. Second, the interests of trustees and creditors, while similar, are not identical. As pointed out by the bankruptcy court, the trustee may settle a case with the idea of maximizing recovery for the estate, while still leaving creditors with unpaid claims.

Creditors who receive less than a 100% distribution, on the other hand, want to be able to pursue payment in full. Transcript, 16 March 2006 at 3–7.

Appellant argues that there is "substantial identity" of interests between the trustee and creditors, but cites no case so holding in the context of § 727 claims. She does cite *Petitioning Creditors of Melon Produce, Inc. v. Braunstein*, 112 F.3d 1232, 1240 (1st Cir.1997) wherein the court held that unsecured creditors were barred, under claim preclusion principles, from pursuing an equitable subordination claim. There the unsecured creditors did not object to the trustee's settlement of an adversary proceeding to avoid preferential and/or fraudulent transfers, nor did they ask the trustee to pursue an equitable subordination claim in that action. Accordingly, the court concluded that "[b]ecause the Trustee was acting for the petitioning unsecured creditors, they are bound by the Trustee's actions." *Id.* The court reasoned that because the Code confers standing only on the trustee, on behalf of creditors, to bring a claim for avoidance of preferential or fraudulent transfers, the trustee would have been the appropriate party to request equitable subordination of the resulting claim.

But this case involves a different statute with a different purpose, and the Code implicitly acknowledges the potentially differing interests of the trustee and individual creditors by conferring independent standing upon each to seek denial of discharge.

**D. *Estoppel?***

 Hansen contends INSCO and Moore's failure to object to her settlement with the trustee estops them from obtaining denial of discharge judgments. In the bankruptcy court she did not explicitly argue estoppel, although she did emphasize that INSCO and Moore had notice of the settlement and failed to object. We do not ordinarily consider arguments advanced for the first time on appeal. *See Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 n. 1 (9th Cir.2002).

 Moreover, Hansen advances no analysis or argument in her brief regarding estoppel, and has thus waived the issue. *Laboa v. Calderon*, 224 F.3d 972, 980–81 n. 6 (9th Cir.2000).

In any event, it is difficult to see why Hansen herself is not estopped from asserting claim preclusion: nothing indicates she raised the issue of the impact the settlement might have on the INSCO and Moore actions when it was before the bankruptcy court for approval, while the INSCO and Moore actions were pending. Hansen articulates no rationale for reversing the normal burden that one who asserts preclusion must establish it. By analogy, we see no reason why it was not her burden to surface the issue, and put appellees on notice that their action might be precluded, or assure that the trustee did.

**E. *Election of Remedies?***

 Hansen complains that appellees have received a distribution from the estate funded by the settlement proceeds and therefore elected their remedy and stand to obtain a double recovery if allowed to prevail. But denial of her discharge will only entitle appellees to pursue collection of the unpaid portions of their claims, while election of remedies:

> prevents a party from obtaining double redress for a single wrong. The doctrine "refers to situations where an individual pursues remedies that are legally or factually inconsistent." *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 49, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). As a general rule, three elements must be present for a party to be bound to an election of remedies: (1) two or more

remedies must have existed at the time of the election, (2) these remedies must be repugnant and inconsistent with each other, and (3) the party to be bound must have affirmatively chosen, or elected, between the available remedies.

*Latman,* 366 F.3d at 781–82 (9th Cir.2004)

There is no prospect of a double recovery, and partial payment via the trustee's settlement is neither factually nor legally inconsistent with later collection of the balance of undischarged debt. There was no election of remedies. In any event, Hansen did not make this argument to the bankruptcy court, and thus waived it. *Stewart,* 297 F.3d at 957 n. 1.

We conclude there is no privity, and settlement of the trustee's action does not bar those of INSCO and Moore.

### F. *FRCP 37 Sanctions*

The bankruptcy court sanctioned appellant $97,678.72 under FRCP 37, applicable via Rule 7037, for appellees' expenses, including attorneys' fees, incurred "in proving the truth of matters denied by Defendant in response to certain admissions requested by Plaintiffs under FRCP 36." Order on Plaintiff's Motion for Attorneys' Fees, 21 March 2006.

The rule provides:

If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (A) the request was held objectionable pursuant to Rule 36(a), or (B) the admission sought was of no substantial importance, or (C) the party failing to admit had

reasonable ground to believe that the party might prevail on the matter, or (D) there was other good reason for the failure to admit.

FRCP 37(c)(2).

Hansen did not oppose appellees' motion in the bankruptcy court and the bankruptcy court granted it. Transcript, 16 March 2006, page 9. Although Hansen prays for the order to be reversed, she sets forth no argument in her briefs. She has twice waived this issue. *See Stewart,* 297 F.3d at 957 n. 1; *Laboa,* 224 F.3d at 980 n. 6 (issues not specifically and distinctly argued in the opening brief are deemed waived).

Accordingly, we will affirm the sanctions order.

### VI. CONCLUSION

Hansen has waived any objection to the bankruptcy court's evidentiary rulings. In any event, she has not shown either abuse of discretion or prejudice suffered as a result of those rulings.

Contrary to Hansen's arguments, the bankruptcy court did not clearly err in finding that appellant acted with the requisite intent to justify denial of discharge under § 727(a)(2) and (a)(4). No other element is in dispute.

Hansen waived the affirmative defense of claim preclusion. Even if she had not, she has shown no abuse of discretion in the denial of her motion for reconsideration on that ground. Nor are her estoppel and election of remedies arguments well founded.

Finally, Hansen has set forth no basis for reversing the bankruptcy court's order awarding discovery sanctions.

Accordingly, we AFFIRM.